We will hear argument next in No. 24-1388, Brimer v. Navy. Do I have the name right? That is correct. Okay. May it please the Court, Daniel Cooley on behalf of the petitioner, Mr. David Scott Brimer. The plain language of Section 3304F1 is clear. Veterans may not be denied the opportunity to compete for vacant positions filed through their promotion process. Mr. Brimer is such a veteran who meets all of the eligibility criteria but was denied the opportunity to compete because the Board held that Section 3304F1 does not apply to veterans who are current federal employees. But the plain language of the statute includes no such limitation on the employment status. Let me just ask you to move along to what you know is the only real issue. You obviously have a substantial argument on the plain language. Equally obviously, you have a problem with our Kerner decision. Explain how, not just kind of on the facts, the holding of Kerner is different, which I think we get, because that one involved 3311 and this one doesn't, but the rationale of what's an interpretation of the 3304, which seems to be that a current federal employee veteran with preference doesn't get this right. Well, Your Honor, I think that ultimately the statutory interpretation question and the question as to why those statements from Kerner are not operative and do not control ultimately converge, we believe that those statements of Kerner could not have been anything beyond a dictus statement precisely because Kerner does not do a baseline statutory construction of 3304. It does not grapple with the plain text of the operative provision 3304F1. It proceeds immediately to discussing the intent of the statute and headings, but those sorts of options under the statutory canon cannot overcome the plain language. And so we believe that ultimately- But I guess those seem to me to be arguments that address whether Kerner in its rationale is just wrong. We don't get to decide that, right? That's an argument for, I don't know, en banc overruling of Kerner. What is the argument? And start with the proposition, which the Supreme Court has said in its context, the rationale of a decision is precedential, not merely the bottom line holding. I think Seminole Tribe says that. So how do you get this panel to do what you want us to do? Sure, Your Honor. I think there are two pathways to address the Kerner decision. I still submit that those discussions of the legislative intent could be viewed as dicta. And I understand Your Honor's point that they are part of the rationale, but they are not part of the ultimate holding. And I think it is quite important that in the Kerner case, you do have the VPA, which is by its own terms, in language of first-timer statute, seeking to be engrafted upon the VEOA. So that is one pathway, is through ruling that those statements were dicta. The other pathway would be through the court's Newell decision. There is an earlier-in-time precedent here, which is the Joseph decision, which Kerner neither addresses on the merits nor overrules, which addresses the plain language of 3304-F1. And as such, that would be an earlier-in-time precedent. And under Newell, that would control. Was that a contested point in Joseph? I heard. Or just an accepted point by the government there? What I would say, Your Honor, is Joseph is somewhere in between those two things. It was not the key contested point, but nor is it what I would say merely just accepted, because if you look at the Joseph decision, it's a decision like Kerner that addresses the interplay between the VPA and the VEOA and in its own text talks about federal employees who are presently employed and veterans who are presently employed in the federal service and those who are not. And so the Joseph court was well aware of this distinction between these two classes of individuals and the rights and remedies that they may have under the VPA and VEOA, and nonetheless goes on to address the plain text of 3304-F1. What exact language in Joseph do you think best shows that it's inconsistent directly with Kerner? I think there are several places, Your Honor, but if I'm referring only to one, I would refer to 1383 where Joseph directly addresses the plain text of the VEOA 3304-F1 and states what it says. It says, Congress here adopted a different approach in dealing with veterans and merit promotion. It guaranteed veterans only a right to apply and an opportunity to compete for such positions. So it guarantees that. The critical statutory provision is 5 U.S.C. 3304-F1, which was added under the veteran statutes of the VEOA. So here it's actually walking through the plain language and the history of the statute. It provides that, quote, all merit promotion announcements shall indicate that veterans are eligible to apply and that specified categories of veterans may not be denied the opportunity to compete for vacant positions for which the agency will accept applications from individuals outside of its own workforce under merit promotion procedures. All that this latter provision entitles veterans to is an opportunity to compete for vacant positions. Here Joseph is dealing with the express text of the statute and finding that it guarantees that right. But it doesn't say specifically, I mean, I appreciate your point on the plain statutory language. I'm just trying to really understand whether Joseph deals with the situation of somebody who's not already, I mean, deals with somebody who is already in a government position. I mean, that's the key issue, right? So where in this language that you've identified does it say this applies even for somebody who is already within the federal government? It doesn't. To answer your question, it doesn't use those words, Your Honor. But Mr. Joseph was, as we know by the facts of the case, already an employee of the federal government. And so we think that this provision is so clear on its face, the statutory language is so clear, there's no need to make such an obvious ruling to exclude all of the negative possibilities that are out there in the universe. That would be a standard difficult to overcome when considering statutory interpretation. The court, considering the statute, must eliminate all possible countervailing factors. So for purposes of the students in the room, this is something that I think was maybe made clear through the earlier questioning. But as a panel, we are bound, a three-judge panel, by all prior three-judge panel decisions that are designated presidential, right? That is correct. And Kerner was designated presidential. That is correct, as was Joseph. So our argument is that Joseph, the earlier in time precedent, if we're going to say that the reasoning and rationale is controlling, then Joseph controls Kerner. And if we're going to say that, by contrast to the first pathway I mentioned, that they're dicta, perhaps they can both be dicta, and this can be the first instance opportunity that the court can consider. An important point, which I will note, is also in Kerner, a point not considered, is whether there is any ambiguity in the plain language warranting a reference to the legislative intent to construe. So this will be the first instance that this court can consider whether that ambiguity issue, because it goes unaddressed, also in Kerner. So if the question is whether this must be a first instance issue, that is a first instance issue addressed neither by Joseph nor by Kerner. Can I ask you, what is your response? Kerner relies on some language in the statute, access for veterans, to come up with the interpretation that this is only for somebody who is coming into the government for the first time. What is your response to that statutory interpretation argument? We believe the word access applies both to presently employed veterans and veterans who are seeking first employment. It's a word that could equally provide access. Both of those classes of veterans are seeking access to employment opportunities. In what statutory provision does the word access appear? It appears, we're referring to the titles of this. And I would note also, under Supreme Court doctrine, where the plain language of the statute is clear, the title cannot override that. And you would say the plain language here is clear. And this was a title that was actually enacted by Congress, right? The title was, yes, as was the operative text. Sometimes titles are not. Sometimes titles are added by the House Law Revision Council to put stuff into the U.S. Code, where the U.S. Code title is not actually enacted by Congress, but Title 38 is. As far as I understand, yes. Does the legislative history help at all with the argument you're trying to make to this? I understand that you don't think you need to reach it, but does it help? I believe, Your Honor, that every canon of statutory construction aids our argument. I believe the plain language aids it. I believe the structure of the statute aids it. And I also believe the legislative history aids it. Because there are various provisions and statements that we note by Congressman Mica, who is the principal sponsor of the bill, where he notes and uses as the primary example for this bill a veteran who was presently employed and had been employed for any number of years in a temporary aspect and was seeking to get full-time employment with the federal government and was unable to do so and for this reason did not gain access to health insurance and any number of other disadvantages that that veteran had to endure. That was the precise example that Congressman Mica spoke about when referring to this legislation. That example is not discussed in the Kerner decision, nor is any of the other examples we point out referring to veterans who were presently employed in the civil service but nonetheless would seek to have benefit under 3304F1. Why don't we hear from Congressman Mica? May it please the court. Mr. Brimer attempts to sow confusion where none exists. This court's conclusion in Kerner was clear, and I quote, Congress did not intend for Section 3304 to apply when a veteran or other preference eligible is already employed in federal civil service. Do you think that the correct statutory question is what Congress intended? Certainly relevant, but not the only correct question, Your Honor. That's just one example of where the whole thing is reiterated in Kerner. As Mr. Brimer acknowledged, it was an unqualified remark that 3304 was limited to veterans outside federal civil service. Counsel, do you agree that the relevant portion of Kerner that you're seeking to rely on was largely based on an unbriefed theory? A theory that wasn't in the briefing in that case? If I do recall the briefing in Kerner, and admittedly I looked at it weeks ago, I do not believe that was specifically raised in the briefing by either party, Your Honor. Well, does that impact how authoritatively we might view the alleged holding of Kerner that you are relying on? I do not agree, Your Honor. It was central to the holding. In fact, the question presented as phrased by Mr. Brimer is whether the Department of the Interior violated veterans' VEOA rights under 3304F. The Kerner court answered that question simply, no, because 3304F does not apply to veterans that are already employed in the federal civil service. That is a direct and central piece of that holding. What language in 3304 best supports that interpretation? The access to veterans' language, Your Honor, as cited in Kerner and discussed by Your Honors with my colleague, is probably the best piece of statutory language. But that's in the title, right? Yes. If you are reluctant to use the title, Your Honor. What title where? Section 2. The title of Section 2 is Access for Veterans, Your Honor. I'm looking at 3304. How does that correspond to Section 2? I would have to look at that, Your Honor. I believe that's 3304F1. Is this in Section 2 of VEOA? Yes, Your Honor. But not actually part of the enacted? I agree with my colleague. It was a portion of the enacted statute. But it's not actually in 3304. Well, Your Honor, that would bring me on to my second point, which is 3304F1, the actual language, the outside-its-own-workforce piece of that language, Your Honor. And that is important to understand the fact that the statute distinguishes between intra-agency merit-based promotions and not an individual from outside the workplace of the agency. Just say that again, I'm sorry. Certainly. 3304F1, there is an outside-its-own-workforce piece of the language, which I think is integral to understanding the fact that the statute treats an intra-agency merit-based promotion separately from individuals seeking employment from outside the workplace. And this is from outside the agency or outside the federal service? 3304F1 speaks specifically to outside-its-own-workforce. Right. This is the sort of hybrid somewhere between merit promotion entirely internally and the overall competitive process with this creature in the middle. That is my understanding, Your Honor, yes. I would also emphasize that 3304F4 speaks to how a veteran must be informed that they are eligible to apply. And frankly, Your Honor, that would not be necessary language for an individual that's already employed in the federal agency for which they are seeking a merit-based promotion. They, of course, are eligible to apply, considering that they are already within the federal agency itself and seeking the possibility of an employment-excuse me, a promotion. Those are what I would argue are the most convincing pieces of the statutory language itself. Judge Cunningham mentioned the legislative history. I would also turn the Court's attention to Senator Hagel, who I believe was the sponsor in the Senate, statement that the purpose of the statute was to, quote, get and hold federal employment, get meaning obtain, initial. And also I would quote, the Act, that's in brackets, opens federal employment opportunities by eliminating artificial boundaries which prevent them from competing for federal jobs because they are not already civil employees or employees of a particular agency. And that's 1.4 Congressional Record 24805. So at the very least, there are portions of the legislative history that support the Kerner's interpretation of Section 3304F1. I would also suggest, Your Honor, that here, even if Mr. Primer were correct that he were entitled to the right to compete, that is actually what he received here. Although it is certainly conceded that the Navy made an error when initially considering Mr. Primer's application, they did, in fact, evaluate his application after the fact and determined that his experience was insufficient to qualify for the position. The full board, right, didn't reach that issue, right? Is that right? No, the MSPB did not, Your Honor. What is your response to opposing counsel's arguments under Joseph? There was a nice back and forth between Judge Stoll and opposing counsel on that, and I'd like you to address that. Certainly, I agree, and I forget if it was Judge Stoll or Judge Toronto, which suggested that that issue was not front and center before the court and was assumed, not briefed by either party as to whether 3304F1 applied and was simply assumed. Second, Your Honor. I apologize. I also believe that the portions that were quoted by opposing counsel did not establish that 3304F1 actually, the court made a ruling that it did apply. It was an assumption that was also included in Joseph. Mr. Joseph was a federal employee who was seeking a merit promotion. Is that correct? Yes, ma'am. Okay. This is obviously getting ahead of where we are since we are a panel. If we were thinking about whether Kerner might be a good candidate for en banc reconsideration, putting aside the merits arguments for a minute, do you have anything to tell us about why there's been reliance on this in a significant way or something about systemic effects? Significant way, Your Honor, I think I'd be overstating my case. I will say that this interpretation of Kerner has been adopted by subsequent panels of this court and the Seventh Circuit, which cited Kerner approvingly. Therefore, it has been adopted. In what kind of case did the Seventh Circuit address this? That case was Shulkin v. It's not an MSPB case, right? No, though it is specifically discussing, or at least the VEOA and whether it applies to federal employees and cites Kerner for the proposition that no, it does not. I mean, it seems like the government's position is that it wouldn't matter anyway because you took an earlier view that any government employee would have the right to be considered for the merit position. I mean, once they're in the federal government. For an interagency promotion, I think that's correct. So why is there a resistance of the government to the interpretation that's being suggested here? One, respect for this court's previous decision on Kerner. Two, Your Honor, I do believe that in the context of someone seeking a promotion that is not interagency or a promotion to which they may not otherwise be entitled in another government agency, there may be an implication where Kerner would prevent that individual from competing for the position. So it does have an impact for where somebody is seeking to change to a different agency. It may, Your Honor. Frankly, that is not something I have. Would a current federal employee just as such have a right to go to the board? That's an interesting question, Your Honor. This came up in mooting this case. I am not aware of any statute that would entitle them to a relief under— I mean, in general, promotions are not within the MSPB's authority. Correct, Your Honor. I'm not aware of any relief that they could obtain in this situation were he or she not a veteran. Unless the panel has any further questions, I will move this. Thank you. Thank you. I just want to make a couple additional points, Your Honor. I would direct the court to page 15 of our briefing, which I do think addresses Your Honor's question about the title. Here it makes clear that Section 2 of the VEOA amended 3304F, and that is what is entitled access for veterans. So it's the act that amended, not in the statute. So that's a clarification for you. Thank you. Second, I would like to note that earlier we were talking about pathways that this panel could address the Kerner decision, and we noted, too, the dicta and the earlier in time precedent via Newell. Of course, the court could, as Your Honor has mentioned, also go en banc. That would be beyond this panel. However, the court has several mechanisms to do such an en banc. One, we would direct court to is the Frankway decision, 940F3D1304. The court has addressed such issues through footnotes. It could also respond to en banc. So there are various means within the en banc pathway to resolve an issue in precedent. And finally, we would note that it's significant that all of this turns on kind of this relief and contrasting between the VEOA and the VPA. And again, the VPA, by its plain language, uses the word entrance. In the operative text, it talks about it being a first-timer statute. That's what Kerner was ultimately holding, we believe. The VEOA, by its plain text, has no such limitation. And we believe it provides veterans like Mr. Brimer the opportunity to compete because Congress was concerned that veterans were the last hired and the first fired and wanted to give them at least minimum that degree of consideration to bring them up to the level to ensure them those rights. For any opening where not restricted to a merits process, internal merits process. It is correct for any opening. And for these reasons, we submit that this case should be vacated such that Mr. Brimer's case can be heard on the merits. Or in the alternative, the court take the issue up en banc to resolve the conflict in precedent. Thank you. Thanks to both counsel. The case is submitted.